**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM P. LONG, et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **C.A.No. 15-305 ERIE** |
| **vs.** | ) | |
| | ) | |
| **UNITED FARM FAMILY INSURANCE** | ) | |
| **COMPANY,** | ) | **Magistrate Judge Baxter** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Magistrate Judge Susan Paradise Baxter[1]

# I.  Background

## A.  Introduction

This action arises out of an insurance policy issued by the Defendant United Farm Family Insurance Company ("UFF" or "Defendant") to Plaintiffs William and Susanne Long, husband and wife ("Mr. Long" and "Mrs. Long," collectively "Mr. and Mrs. Long") covering losses regarding their residence.  Mr. and Mrs. Long instituted this action in federal court against UFF by original Complaint filed on December 17, 2015 (ECF No. 1), alleging that Defendant's handling of two separate losses under the insurance policy was in bad faith in violation of 42 Pa.C.S.A. § 8371 (Count I) and was in breach of the implied covenant of good faith and fair dealing (Count II).  Subsequently, with consent of UFF, (ECF No. 14), Mr. and Mrs. Long filed an Amended Complaint on April 26, 2016, with the same two counts.  (ECF No. 15).  Neither the Complaint nor the Amended Complaint attempted to state any claim on behalf of their adult

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

daughter, Andrea Long ("Ms. Long" or "Andrea"), who resided with them. On June 1, 2016, Mr. and Mrs. Long filed a motion and amended motion pursuant to Federal Rule of Civil Procedure 20(a) to join Ms. Long as party-plaintiff in this action, (ECF Nos. 26 and 28), asserting that Ms. Long resided in and continued to reside in the home covered by the policy, that Ms. Long's claim for physical and emotional distress arose out of the same transactions, occurrences or series of transactions or occurrences as the two casualty losses on which the Amended Complaint was based, and that Ms. Long's claim presented common questions of law and fact, and therefore, permissive joinder would minimize judicial waste and promote judicial economy. (ECF No. 28). UFF opposed the joinder and argued, in part, that any claim by Ms. Long would be untimely. (ECF No. 29). Noting its broad discretion, on July 22, 2016, the Court granted the motion to join Ms. Long (ECF No. 34), but also indicated that it was without prejudice to Defendant to raise the arguments on a dispositive motion. As a result, the Second Amended Complaint was filed on July 27, 2016, (ECF No. 25), including a claim under Count III by Ms. Long for breach of the implied covenant of good faith and fair dealing regarding the insurance policy. (ECF No. 35 at ¶¶ 130-134). On August 16, 2016, UFF filed its present motion to dismiss. (ECF No. 37).

After considering the complaint (Docket No. 35), UFF's motion to dismiss and brief in support, (Docket Nos. 37 and 38), and Ms. Long's response in opposition, (Docket No. 47), the Court will grant the motion to dismiss Count III, (Docket No. 37), with leave to amend.

**B.      Facts**

The following well pleaded facts, taken from the Second Amended Complaint, will be taken as true in the motion to dismiss context. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Ms. Long, an adult, lived with her parents, Mr. and Mrs. Long, in their home in Russell, PA ("the residence"). (Docket No. 35 ¶¶ 1, 2). UFF issued a policy of insurance ("policy") to Mr. and Mrs. Long insuring against risk of loss to the residence and household contents and providing for living expenses in the event of certain perils regarding the residence. (Docket No. 35 ¶¶ 7, 9).

The policy contains two provisions addressing "Suit Against Us." One provision is located under the section addressing "Property Conditions I, II, III and IV" and states:

> **6.** **Suit Against Us**. No actions can be brought against US unless YOU have complied with policy provisions and that action is started within one (1) year after the date of loss or damage.

(ECF No. 35-1 at 24). The other provision is located under the section of the policy addressing "Liability Conditions Division V," and states:

> **6.** **SUIT Against US.** No action can be brought against US unless:
> a. the INSURED had fully complied with the policy provisions; and
> b. the obligation of the INSURED has been determined by final judgement or agreement signed by US.
> If WE do not satisfy a judgment against YOU within thirty (30) days of entry, for loss, damage or injury during the life of the policy, WE can be sued for the amount of the judgment within the coverage limits. The person who recovers a judgment against YOU may sue US, as can anyone who lawfully shares in or assumes that interest.
> In the event of a dispute between YOU and US as to whether there is coverage under this policy, that action must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico or Canada.

(ECF No. 35-1 at 32).[2]

---

[2] When arguing in support of and in opposition to the motion to dismiss, counsel for both parties failed in their filings to cite to the page of the policy on which the provisions to which they refer appear. They are advised that when they cite to a provision in a nearly 100 page policy, they should specifically reference the relevant page(s).

On January 9, 2014, Mr. and Mrs. Long discovered that they had suffered a loss under the policy due to a broken pipe in the heating system on the second floor of their home, which resulted in water running down from the second floor through the kitchen on the first floor and into the finished basement. (Docket No. 35 ¶¶ 11, 12). On January 9, 2014, Mr. and Mrs. Long notified UFF of the property loss. (Docket No. 35 ¶ 14). The residence, as a result, suffered damage, including mold growth. (Docket No. 35 ¶ 18). The UFF adjuster gave Mr. and Mrs. Long the name of a "cleanup" company, however, as it turned out that company did not service their area. (Docket No. 35 ¶¶ 16-17). Mr. and Mrs. Long then engaged a company to remediate the mold and water damage to the residence and its contents, but promptly thereafter terminated that company's service because they found it to be dissatisfactory. (Docket No. 35 ¶¶ 19-20). Mr. and Mrs. Long informed UFF that their daughter, Andrea, suffered an immunodeficiency disorder and that the mold exposure could be seriously detrimental to her health. (Docket No. 35 ¶ 21). As a result of exposure to the mold at the residence, Mr. and Mrs. Long, as well as Andrea Long, became physically ill, and after Andrea sought medical attention, she was informed by her doctor that remaining in the residence was dangerous to her health. (Docket No. 35 ¶¶ 22-23). Accordingly, Mr. and Mrs. Long and Andrea Long temporarily relocated elsewhere, but the exposure to a different environment caused great distress to Mr. and Mrs. Long and Andrea Long. and Mr. and Mrs. Long had to monitor Andrea Long's health closely and frequently seek medical attention and care for her as a result. (Docket No. 35 ¶¶ 34-35). During the process of addressing the loss, UFF representatives performed various inspections of the residence, but did not inspect the contents. (Docket No. 35 ¶¶ 25, 26, 42-43).

In the meantime, Mr. and Mrs. Long had mold remediation estimates prepared by Ahold of Mold and UFF attributed the work to be performed by Ahold of Mold for mold remediation,

water damage remediation and mold testing and analysis to Mr. and Mrs. Long's mold loss claim, which estimates were in excess of the mold loss cap of $15,000.00. (Docket No. 35 ¶¶ 38, 41). Mr. and Mrs. Long and their insurance company disputed the appropriate estimate as to the cost of repairs to the residence as a result of the water loss, and Mr. and Mrs. Long engaged National Fire Adjusters ("NFA"), a public adjusting company, regarding the dispute. (Docket No. 35 ¶¶ 38, 41). UFF issued various checks to pay for repairs and living expenses during the loss and repair. (Docket No. 35 ¶ 50). On March 28, 2014, Mr. and Mrs. Long requested an extension to file proofs of loss, but the extension was denied. (Docket No. 35 ¶¶ 51-52).

On April 3, 2011, NFA, on behalf of Mr. and Mrs. Long, provided UFF with signed and sworn proofs of loss by Mr. and Mrs. Long for the residence, including the mold loss, contents loss, and loss in the form of additional living expense they incurred as part of their property loss claim under the insurance policy. (Docket Nos. 35 ¶ 55; 35-16 and 35-17 (Ex. 15)). UFF did not provide a written acceptance or written denial of Mr. and Mrs. Long's proof of loss within fifteen working days after UFF received it. (Docket No. 35 ¶ 56). On April 14, 2014, UFF stopped making payments for additional living expenses and Mr. and Mrs. Long with Andrea Long moved back to the residence, living there and in a camper parked on the premises next to the residence. (Docket No. 35 ¶¶ 58, 59).

Then, on May 5, 2014, a fire occurred at the residence, originating in the basement and a cause and origin investigator determined that the fire was accidentally started in a basement fixture with pooled water likely caused by the January 9, 2014 incident. (Docket No. 35 ¶¶ 68, 72). Mr. and Mrs. Long reported their loss and UFF acknowledged receipt of their claim. (Docket No. 35 ¶¶ 69, 70). On May 15, 2014, Mr. and Mrs. Long through NFA requested an advance for the content loss and for additional living expenses, (Docket Nos. 35 ¶ 77; 35-22),

which UFF denied on May 18, 2014.    (Docket No. 35 ¶¶ 82).  Mr. and Mrs. Long then engaged present counsel to represent them regarding the fire loss claim and they submitted to examination under oath by UFF on June 16, 2014.  (Docket No. 35 ¶¶ 84, 87).  On July 9, 2014, as with the water loss. Mr. and Mrs. Long submitted to UFF signed and sworn proofs of loss regarding the fire. (Docket No. 35 at ¶ 90; 35-26 (Ex. 24)).  Neither Andrea's name nor signature appears anywhere on the sworn proofs of loss submitted by Mr. and Mrs. Long.  There likewise is no factual allegation in the Second Amended Complaint or indication in the attachments thereto that Andrea Long ever submitted any claim of loss for coverage by UFF.

On August 14, 2014, Mr. and Mrs. Long demanded appraisal of the water, mold and fire loss, and offered to afford UFF additional time to respond so that UFF could meet with NFA and attempt a resolution of all the outstanding matters.  (Docket Nos. 35 ¶ 92; 35-27 (Ex. 25)).  However, between August 14, 2014 and September 9, 2014, UFF did not agree to meet with an NFA representative, did not attempt to come to an agreement of value in dispute, and did not provide a written response to Mr. and Mrs. Long's sworn proofs of loss.  (Docket No. 35 ¶¶ 93).  On September 9, 2014, Mr. and Mrs. Long provided UFF with their signed sworn proofs of loss and inventory of the fire contents loss claim in the amount of the limits of insurance, and counsel for Mr. and Mrs. Long informed UFF's counsel that they had not responded to the August 14, 2014 appraisal demand. (Docket Nos. 35 ¶¶ 94, 95; 35-28, 35-29 (Exhibit 26)).  UFF then responded on September 9, 2014, by indicating a hold was placed on the items listed in the contents proof of loss until documented, accounted and confirmed, and UFF also responded on September 15, 2014 by nominating its appraiser.  (Docket No. 35 ¶¶ 96, 97).  On October 1, 2014, UFF inquired as to the contents that remained in the home after the water loss, (Docket No. 35 ¶ 98), and on October 3, 2014, first inspected the fire damaged contents.  (Docket No. 35

¶ 99).  Examination of Mr. and Mrs. Long under oath was completed on October 8, 2014.

(Docket No. 35 ¶ 100).  On October 13, 2014, Mr. and Mrs. Long requested through NFA:  that

UFF resolve the contents and additional living expense portion of their fire claim; that UFF

provide a reasonable and suitable advance for additional living expense so Mr. and Mrs. Long

could establish a reasonable living environment for their family; and that UFF provide an

advance on the contents loss so they could purchase winter clothing.  (Docket Nos. 35 ¶ 101; 35-

35).  UFF's assigned adjuster indicated that he would respond by October 15, 2014, and then on

October 15, 2014 indicated to NFA that a formal letter would be emailed and sent the following

morning.  (Docket No. 35 ¶¶ 102, 103).  Then on October 16, 2014, by letter dated October 14,

2014, UFF indicated regarding the fire loss that it was denying the entire contents proof of loss

except for items in the immediate vicinity of the fire, all structure loss beyond the estimate of

$50,315.93 and any additional living expense advance, and indicated that the remainder of any

such claim would be determined through appraisal.  (Docket No. 35 ¶ 105).

     With no additional advance for living expenses, Mr. and Mrs. Long, as well as their

daughter Andrea Long, continued to live in an unfinished garage at the residence premises and

utilized their camper for toilet facilities through the winter of 2014-2015. (Docket No. 35 ¶ 106).

Mr. William Long and Ms. Andrea Long became physical ill and sought medical attention based

on the living conditions and Mr. and Mrs. Long and Andrea Long purportedly suffered great

distress as a result of the living environment.  (Docket No. 35 ¶¶ 107, 108).

     On October 17, 2014, Ahold of Mold submitted to UFF a remediation estimate for heavy

smoke infiltration of the wall and ceiling cavities in the residence and provided an estimate for

tear out beyond the immediate vicinity of the fire, which UFF denied as to estimates beyond tear

out in the affected room where the fire originated.  (Docket No. 35 ¶¶ 109, 110).  Mr. and Mrs.

Long filed suit on January 6, 2015, in the court of common pleas and the parties submitted all of the claims to appointed appraisers. (Docket No. 35 ¶¶ 111-112). On February 26, 2015, the appraisers entered an award on both the water loss and fire loss claims submitted by Mr. and Mrs. Long, (Docket No. 35 ¶ 113), and UFF paid the award minus amounts previously paid. (Docket No. 35 ¶¶ 114, 116). Ultimately, UFF's payments on the award resulted in it having to make additional payments for the fire loss more than ten (10) months after the loss, and for the water loss more than fourteen (14) months after the loss. (Docket No. 35 ¶¶ 115, 117).

Mr. and Mrs. Long incurred various legal costs and fees in pursuing their benefits under the policy prior to this suit in federal court. (Docket No. 35 ¶ 119).

## II.    Standard of Review

### A.    Rule 12(b)(6) Motion to Dismiss Standard

On a motion to dismiss filed pursuant to Rule 12(b)(6), the alleged facts must be viewed in the light most favorable to the plaintiff and the complaint's well pleaded allegations must be accepted as true. Erickson, 551 U.S. at 93–94. A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Emps'. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 146 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556 (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004)). Although the Supreme Court of the United States does "not require heightened pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, on a motion to dismiss, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, No. 07-528, 2008 WL 482469, at *1 (D. Del. Feb. 19, 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556 n.3).

The Third Circuit has expounded on the Twombly/Iqbal line of cases. To determine the sufficiency of a complaint under Twombly and Iqbal, in general, the court follows three steps:

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (internal citations and quotations omitted).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." Tracinda Corp. v. DaimlerChrysler AG, 197 F. Supp. 2d 42, 53 (D. Del. 2002) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)). A complaint is properly dismissed under Rule 12(b)(6) when it does not allege "enough

facts to state a claim to relief that is plausible on its face," <u>Twombly</u>, 550 U.S. at 570, or when the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. The question is not whether the plaintiff will prevail in the end. Rather, the question "is whether the plaintiff is entitled to offer evidence in support of his or her claims." <u>Swope v. City of Pittsburgh</u>, 90 F. Supp. 3d 400, 405 (W.D. Pa. 2014) (citing <u>Oatway v. Am. Int'l Grp., Inc.</u>, 325 F.3d 184, 187 (3d Cir. 2003)).

When considering a motion to dismiss under Rule 12(b)(6), a court ordinarily may not consider matters outside the complaint. <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997). Consideration of such matters will result in the motion being converted to a motion to a motion for summary judgment as provided in Federal Rule of Civil Procedure 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."), except that, as instructed by the Court of Appeals for the Third Circuit, a document integral to, attached to or explicitly relied upon in the complaint may be considered without converting a Rule 12(b)(6) motion into a Federal Rule of Civil Procedure 56 motion for summary judgment. <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1426 (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3rd Cir.1993)). Thus, where the complaint attaches the document, such as the insurance contract attached to the Second Amended Complaint in this dispute, the Court may consider it in resolving the motion to dismiss. <u>Bailey v. State Farm Mut. Auto. Ins. Co.</u>, Civ. Act. No. 15-07, 2015 WL 2248228, at *3 (W.D. Pa. May 13, 2015).

Regarding limitation of actions, the Court of Appeals for the Third Circuit instructed in <u>Schmidt v. Skolas</u>, 770 F. 3d 241 (3d Cir. 2014):

> while a court may entertain a motion to dismiss on statute of limitations grounds ... it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense. This distinction comes to the fore here, where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply.

770 F. 3d at 251 (citations omitted).  Nevertheless, "[d]ismissal of a complaint on statute of limitations grounds is appropriate when the defense is apparent on the face of the complaint." Fallin v. Pennsylvania Dep't of Transp., 2017 WL 117528, at *2 (3d Cir. Jan. 12, 2017) (citing Stephens v. Clash, 796 F.3d 281, 288 (3d Cir. 2015)).  Although a limitations bar ordinarily is an affirmative defense, where the claim is time-barred on its face, the plaintiff need otherwise demonstrate it as timely to defeat a proper motion to dismiss on limitations grounds. Johnson v. GlaxoSmithKline LLC, 636 Fed. App'x. 87, 89 (3d Cir. 2016); see also Evans v. City of Butler, 2017 WL 67863, at *3 (W.D. Pa. Jan. 6, 2017).

## III.    Discussion

The sum and substance of Count III alleges that:  in addition to Mr. and Mrs. Long, Ms. Andrea Long also was an insured and intended beneficiary of the Policy; UFF owed to Ms. Long as an insured the fiduciary duty of good faith and fair dealing; UFF failed to settle Ms. Long's claims under the policy in a fair, reasonable, and timely manner and as a result breached the covenant of good faith and fair dealing; and due to the breach, Ms. Long suffered foreseeable compensatory damages, including physical and emotional distress.  (ECF No. 35 at ¶¶ 130-134).

### A.    Alleged Mishandling of a Claim not Filed by Andrea Long

On the present motion, Defendant first asserts that Ms. Long's claim should be dismissed because she did not file any claim with UFF.  Ms. Long does not address UFF's argument that Count III fails because she never filed any claim under the policy.   Count III alleges that UFF

breached the covenant of good faith and fair dealing with Ms. Long by "failing to settle Andrea Long's claims under the policy in a fair, reasonable and timely manner," (ECF No. 35 at ¶ 133), yet nowhere does the Second Amended Complaint allege that Ms. Long actually made any claim against the policy.  The only insurance claims made as alleged or as attached to the Second Amended Complaint are the claims by and for Mr. and Mrs. Long.  Accordingly, Ms. Long's attempted Count III fails to state a claim for bad faith in the handling of her insurance claim because she fails to allege anywhere that she actually presented any claim to UFF.

**B.    Limitations Bar**

Here, Ms. Long attempts to bring a common law bad faith contract claim.  According to Ms. Long, as she lived at the residence with her parents she was an intended beneficiary of the policy and of UFF's adjusting practices and procedures regarding the water loss and fire loss, and UFF owed her the duty of good faith and fair dealing just as it owed such a duty to Mr. and Mrs. Long.  (ECF No. 47 at 2).  UFF asserts in support of its motion that to the extent Ms. Long actually did file a claim with the insurer, she was required to bring suit against it within one year after the date of loss according to the suit limitations provision in the policy, and because she did not, her claim is barred and should be dismissed.

*1.   Nature of Bad Faith Claim and Applicable Statute of Limitations*

"There are two separate 'bad faith' claims that an insured can bring against an insurer: a contract claim for breach of the implied contractual duty to act in good faith and with fair dealing [—a common law bad faith contract claim—], and a statutory bad faith tort claim under 42 Pa. Cons. Stat. Ann. Section 8371." Tubman v. USAA Cas. Ins. Co., 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013) (quoting Birth Center v. St. Paul Cos., Inc., 787 A.2d 376, 390 (Pa. 2001) (Nigro, J. concurring).  "In Pennsylvania, the common law duty of good faith and fair dealing is implied in

every contract," <u>Tubman</u>, 943 F. Supp. 2d at 529, and a bad faith claim for breach of that duty sounds in contract and is subsumed within a breach of contract claim. <u>Burton v. Teleflex Inc.</u>, 707 F.3d 417, 431 (3d Cir. 2013); <u>Fingles v. Cont'l Cas. Co.</u>, 2010 WL 1718289, at *3 (E.D.Pa. Apr. 28, 2010); <u>Zaloga v. Provident Life and Acc. Ins. Co. of Am.</u>, 671 F.Supp.2d 623, 629 (E.D.Pa.2009) (claims merge); <u>Tubman</u>, 943 F. Supp. 2d at 529 (same). "Consequently, the covenant of good faith [applies] only to the [] performance of duties that specifically arise out of the [parties'] contract." <u>Silvis v. Ambit Energy L.P.</u>, 2017 WL 75761, at *3, --- F. App'x --- (3d Cir. Jan. 9, 2017) (citing <u>Burton</u>, 707 F.3d at 431, and <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 F.3d 78, 91–92 (3d Cir. 2000)).

The Pennsylvania Supreme Court specifically recognizes a common law bad faith contract claim for an insurer's breach of its contractual duty to act in good faith and fulfill its fiduciary duty to its insured. <u>Birth Center</u>, 787 A.2d at 379; <u>see also</u> <u>Ash</u>, 932 A.2d at 884 (distinguishing between statutory tort and common law contract action). Pursuant to such a claim, "the insurer is liable for the known and/or foreseeable compensatory damages of its insured that reasonably flow from [its] bad faith." 787 A.2d at 379; <u>D'Ambrosio v. Pennsylvania Nat'l Mut. Ins.</u>, 431 A.2d 966, 970 (Pa. 1981). The statute of limitations for a common law bad faith claim is the contract statute of limitations of four years provided for in 42 Pa.C.S. § 5525, because unlike a statutory bad faith claim brought under 42 Pa.C.S. § 8371, common law bad faith does not sound in tort. <u>Haugh v. Allstate Ins. Co.</u>, 322 F.3d 227, 237 (3d Cir.2003). Ms. Long's claim is not untimely under the statute of limitations.

### 2. *Contractual Suit Limitations Apply to Bad Faith Claims*

Ms. Long's common law bad faith claim asserts that UFF improperly handled the "water loss claim" and the "fire loss claim," and as a result, she suffered foreseeable physical and

emotional damages as she was exposed to stress and hostile living conditions causing her to become physically ill and emotionally distressed. (ECF No. 47 at 2). UFF argues that her claim should be dismissed as untimely under the insurance contract's contractual limitations provision.

Ms. Long argues that the contractual limitations period of one year urged by UFF, as opposed to the statutory limitations period of four years, does not apply to her bad faith claim on essentially two bases: 1) it would be "unfair" to apply a contractual limitations period to a bad faith claim; and 2) the contractual limitations period provided for in the applicable policy of insurance is ambiguous and therefore cannot apply to her claim. (ECF No. 47 at 2).

Policy provisions further restricting the right to sue one's insurer beyond the state statute of limitations have been upheld uniformly by Pennsylvania courts. Petraglia v. Am. Motorists Ins. Co., 284 Pa. Super. 1, 4, 424 A.2d 1360, 1362 (1981), aff'd, 498 Pa. 32, 444 A.2d 653 (1982); see Schreiber v. Pennsylvania Lumberman's Mut. Ins. Co., 444 A.2d 647, 648 (Pa. 1982) (finding without merit argument that one-year suit limitation provision in policy should not bar claim unless insurer demonstrates that it is prejudiced by delay). The Pennsylvania Supreme Court in General State Authority v. Planet Ins. Co, 346 A.2d 265, 268 (Pa. 1975), recognized the validity and binding nature of contractual suit limitation provision. Thus, contractual suit limitations, in general, are not improper under Pennsylvania law. Palmisano v. State Farm Fire and Cas. Co., 2012 WL 3595276, at *9 (W.D Pa. 2012); Patel v. Am. Safety Indem. Co., 2016 WL 520994, at *4 (W.D. Pa. Feb. 10, 2016).

Ms. Long argues that UFF improperly relies on Cummings v. Allstate Ins. Co., 832 F. Supp. 2d 469 (E.D. Pa. 2011), and Palmisano in support of its motion to dismiss, because according to her, those cases do not stand for the proposition that the suit limitation provision can apply to a bad faith claim. (ECF No. 47 at 5). As Ms. Long correctly asserts, Cummings

does not direct the result here. (ECF No. 47 at 5). <u>Cummings</u> simply observed that a bad faith claim merges with the breach of contract claim because "Pennsylvania law does not recognize a separate breach of contractual duty of good faith and fair dealing where said claim is subsumed by a separately pled breach of contract claim." <u>Simmons v. Nationwide Mut. Fire Ins. Co.</u>, 788 F. Supp. 2d 404 (W.D. Pa. 2011) (citing <u>Cummings</u>, 832 F. Supp. 2d at 474).

Recognizing this principle, Ms. Long further argues that:

[a]lthough breach of contract and breach of the implied covenant of good faith and fair dealing claims cannot co-exist in the same pleading, since they merge (see <u>Cummings</u>, supra), each should be treated differently for contractual limitations purposes. Indeed, to hold otherwise would allow an insurance company to contractually eliminate its obligation of good faith and fair dealing after one year, defeating the protections which the Pennsylvania courts have provided.

(ECF No. 47 at 6). She then argues that her claim is not a breach of a term in the contract but rather a breach of a judicially imposed obligation. (ECF No. 47 at 6). This is a distinction that makes no difference and is contrary to the precedent discussed <u>supra</u> holding that the duty of good faith and fair dealing is inherent in the terms of the contract, that a bad faith claim is a contract claim in nature, and that bad faith and breach of contract claims merge.

UFF's reliance on <u>Palmisano</u>, however, is properly placed. The court in <u>Palmisano</u> granted the insurer's motion to dismiss based on the suit limitations clause. Like Ms. Long, the plaintiffs in <u>Palmisano</u> argued that allowing the contractual limitations defense would permit the insurer to benefit from its bad faith conduct. Recognizing that there was no authority for the proposition that an untimely claim for ordinary or bad faith breach of an insurance policy will be rendered timely simply because of a bad faith allegation, the <u>Palmisano</u> court observed that "the cases teach that bad faith insurance practices which do not include acts of misleading the insured as to the applicability of the contractual limitations period or causing intentional delays to avoid

15

coverage do not preclude an insurance company from raising a suit limitations clause as a defense." 2012 WL 3595276, at \*10–11 (citing <u>McElhiney v. Allstate Ins. Co.</u>, 33 F.Supp.2d at 405, 408 (E.D. Pa. 1999)).

> <u>Palmisano</u> stated further that:
>
> Pennsylvania courts have recognized limited exceptions to the application of an otherwise valid contractual limitations clause, including that such clauses may be defeated by estoppel or waiver. <u>See</u> <u>Prime Medica Assoc. v. Valley Forge Ins. Co.</u>, 970 A.2d 1149, 1156–57 (Pa. Super. 2009). To succeed on either theory, a plaintiff must set forth a factual basis to demonstrate "reasonable grounds for believing that the time limit would be extended or that the insurer would not strictly enforce the suit limitation provision." <u>Id.</u> (internal quotation omitted).

<u>Id.</u> at \*10–11. The Pennsylvania Supreme Court also "recognize[s] that if the conduct or action on the part of the insurer is responsible for the insured's failure to comply in time with the conditions set forth, injustice is avoided and adequate relief assured by resort to traditional principles of waiver and estoppel." <u>General State Authority v. Planet Insurance Company</u>, 464 Pa. 162, 346 A.2d 265, 268 (1975).

Undaunted, Ms. Long contends that applying a contractual limitations bar to a bad faith claim improperly could render the duty a nullity and therefore is impermissible to apply. That position might be true if a loss under an insurance contract occurred, the bad faith subsequently occurred after expiration of the limitations period applied to the initial loss, and a court considered the bad faith claim also barred even before the bad faith occurred. However, there is nothing to suggest that, as with a statutory limitations provision, a contractual limitations provision is so woodenly applied by the courts to reach such an absurd result. Considerations of claim accrual and equitable doctrines, where applicable, would rescue such an improperly doomed claim. <u>Blackwell v. Allstate Ins. Co.</u>, 2015 WL 5116439, at \*3 (E.D. Pa. Aug. 31, 2015)

("For purposes of determining the statute of limitations, the Court generally must look to the date on which the defendant insurance company is alleged to have acted in bad faith. . . . The tolling of the statute begins at the time of the initial breach, even if the extent of the damage has not yet been determined."); Palmisano, 2012 WL 3595276, at *10–11. Indeed,

> In general, the statute of limitations begins to run [only] when a right to institute and maintain suit arises. A bad faith claim,[ for example, may] arise[] upon a frivolous or unfounded refusal to pay proceeds of policy. [The claim accrues, then] when the insurer denied liability because this [is] when the refusal to pay first occurred.

Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 224–25 (3d Cir. 2005) (internal citations and quotations omitted).

Contrary to Ms. Long's suggestion, Palmisano's determination that a contractual limitations provision is applicable both to the ordinary breach of contract *as well as* a claim for breach of the duty of good faith and fair dealing read into the contract is based on sound reasoning. Ms. Long's argument that enforcing contractual suit limitations would encourage bad faith is wholly without merit and none of the "litany of horribles" envisioned by Ms. Long—insurers engaging in bad faith with reckless abandon—is relevant to this case.

### 3. Accrual of Any Bad Faith Claim Ms. Long May Have

The Pennsylvania Superior Court in Adamski v. Allstate Ins. Co., 738 A.2d 1033 (Pa. Super. 1999), instructs that where a plaintiff raises a bad faith claim against the insurer on the basis of alleged separate and distinct acts of bad faith, such as: refusal to defend or indemnify; denial of liability protection without first seeking declaratory judgment; failure to settle; lack of adequate basis for denying protection; and failure to conduct a diligent investigation; id. at 1038, that such "a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined." Id. at 1042. Thus, where an insurer clearly and unequivocally puts

17

an insured on notice that he or she will not be covered under a particular policy for a particular occurrence, the limitations period begins to run and the insured cannot avoid it by asserting that a continuing refusal to cover was a separate act of bad faith. *Id.* at 1040, 1042–43.  See also CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co., 645 F. Supp. 2d 354, 364–66 (E.D. Pa. 2009) (failure to adequately investigate and failure to acknowledge an agent's authority relate back to the initial denial and do not create separate claims for bad faith).  In Sikirica, relying on Adamski, the Third Circuit predicted that the Pennsylvania Supreme Court would find that the limitations period begins to run when the bad faith cause of action arises or accrues, such as "upon a 'frivolous or unfounded refusal to pay proceeds of policy.'" Id. at 225 (quoting Adamski, 738 A.2d at 1036).

Applying Adamski and Sikirica, the damages Ms. Long claims here were realized and known well before she attempted her present claim, whether considering accrual dates as of the alleged bad faith denials of additional living expenses resulting in the Long family's initial "change of environment" and their subsequent decision to remain in the camper on the premises of the residence—which occurred at the very latest with the letter sent on October 16, 2014 denying additional living expenses for the fire claim.  Even considering a date as indulgently late as the date of the appraisal award to Mr. and Mrs. Long, which was February 16, 2015, Andrea Long's claim was barred under the limitations provision several months prior to the June 1, 2016 request to amend to add her and the claim under Count III to this action.

### 4. *Asserted Ambiguity in Limitations Provision*

Lastly, the Court addresses Ms. Long's argument that the contract limitations clause does not apply to her claim because it is ambiguous.  Citing to general rules of insurance policy interpretation, Ms. Long aptly argues that insurance policies are contracts of adhesion between

parties of unequal bargaining power, <u>MDL Capital Mgmt. v. Fed. Ins. Co.</u>, 2008 WL 2944890, at

* 12 (W.D. Pa. July 25, 2008), the policy must be read in its entirety with its intent gathered from

the entire policy, <u>Riccio v. American Republic Ins. Co.</u>, 705 A.2d 422, 426 (Pa. 1997), and that

the proper focus is the reasonable expectation of the insured. <u>Bubis v. Prudential Property and

Casualty Ins. Co.</u>, 718 A.2d 1270, 1272 (Pa. Super. 1998).

      Ms. Long then points out that there are two provisions in the insurance contract regarding

suits against the insurer, one with a contractual limitations period and one without, and thus, an

ambiguity is created when considering both provisions such that the one year contractual

limitations period cannot apply to her claim. (ECF No. 47 at 3). As stated in <u>Gene and Harvey

Builders v. Pa. Manufactuers Ass'n. Ins. Co.</u>, 517 A.2d 910 (Pa. 1986):

> The task of interpreting [an insurance] contract is generally performed by a court
> rather than by a jury. The goal of that task is, of course, to ascertain the intent of
> the parties as manifested by the language of the written instrument. Where a
> provision of a policy is ambiguous, the policy provision is to be construed in
> favor of the insured and against the insurer, the drafter of the agreement. Where,
> however, the language of the contract is clear and unambiguous, a court is
> required to give effect to that language.

<u>Id.</u> at 913 (internal citations and quotations omitted); <u>see</u> <u>also</u> <u>Standard Venetian Blind Co. v.

American Empire Insur. Co.</u>, 469 A.2d 563, 566 (Pa. 1983).

      There is no "generalized" breach of the duty of good faith and fair dealing alleged here,

assuming Pennsylvania even would recognize such a claim. Rather, Ms. Long's asserted breach

of the duty hinges on the coverage under the Property Conditions and the obligation to pay

regarding losses covered thereunder. The Court agrees with Ms. Long that the contractual

limitations being contained under the Property Conditions provisions would not apply to a

dispute regarding the Liability Provisions as there are no such contractual limitations thereunder

nor does there appear to be any catchall limitations period in the contract as a whole. The Court,

however, sees no ambiguity simply when considering that there is a contractual suit limitations provision under the Property Conditions and no contractual suit limitations provision under the Liability Conditions section of the policy. Ms. Long's present claim is a suit against the insurer regarding coverage under the Property conditions, and UFF's handling and denials thereunder, and therefore, the contractual suit limitations provision expressed in the Property Conditions applies to bar the filing of her claim because her attempted claim is stated in terms of bad faith in administering the Property Conditions. Absent some other argument, not presently offered nor apparent on the face of the Second Amended Complaint, the one year contractual suit limitations provision in the UFF policy is not invalid as applied to Ms. Long's common law bad faith contract claim. Accordingly, her claim in Count III is time-barred and UFF's motion to dismiss Count III will be granted.

### C. Futility of Amendment

The Court is instructed by Federal Rule of Civil Procedure 15(a)(2) that it "should freely give leave [to amend] when justice so requires." See Fed.R.Civ.P. 15(a)(2). Given the foregoing hurdles, it is unclear whether Ms. Long can effectively state a claim for relief. See Patel v. Am. Safety Indem. Co., 2016 WL 520994, at *4 (W.D. Pa. Feb. 10, 2016) (citing Jablonski, 863 F.2d at 292 (amendment futile as matter was time-barred)). At this stage, however, and given the absence of present allegations regarding when and what claim Ms. Long filed under the policy that UFF then allegedly mishandled, the Court will give her an opportunity to amend to state a claim for relief as timely considering possible equitable principles and to state such a claim regarding what she identified as mishandling of her claim. Failure to so amend will result in dismissal of Count III with prejudice.

### IV. Conclusion

In accordance with the foregoing, Count III brought by Plaintiff Andrea Long for breach of the duty of good faith and fair dealing (common law bad faith) fails to state a claim, however, Ms. Long will be given leave to amend. Defendant's motion to dismiss (Docket No. 37) will be granted, and Count III will be dismissed without prejudice. Any amended Complaint shall be filed by March 17, or Count III will be dismissed with prejudice.

An appropriate Order will follow.

<u>s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 17, 2017